UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**  
**CHARLES D. AUSTIN**  
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET  
BALTIMORE, MARYLAND 21201  
(410) 962-7810  
MDD_CDAChambers@mdd.uscourts.gov

December 18, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:  *Vanesta H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
     Civil No. 23-594-CDA

Dear Counsel:

On March 6, 2023, Plaintiff Vanesta H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 12, 14, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on June 5, 2017, alleging a disability onset of February 22, 2017. Tr. 146–47. Plaintiff's claim was denied initially and on reconsideration. Tr. 94–97, 102–03. On April 1, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 31–63. Following the hearing, on May 7, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 12–30. The Appeals Council denied Plaintiff's request for review of the decision, Tr. 1–6, so Plaintiff petitioned this Court for judicial review, Tr. 816–23. On May 21, 2021, the Court remanded Plaintiff's case to the SSA for further analysis. Tr. 827. On remand, the SSA vacated the May 7, 2019 decision. Tr. 828–34. On December 8, 2022, a second hearing was held before a different ALJ. Tr. 763–89. On December 22, 2022, the ALJ issued an unfavorable decision on Plaintiff's claim. Tr. 740–62. That decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. §§ 404.984(d), 422.210(a).

## II.  THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[1] 42 U.S.C. §§ 301 et seq.

*Vanesta H. v. Kijakazi*
Civil No. 23-594-CDA
December 18, 2023
Page 2

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 22, 2017, the alleged onset date."  Tr. 745.  At step two, the ALJ found that Plaintiff suffered from severe "fibromyalgia syndrome, osteoarthritis, disorders of the spine, and left shoulder tendonitis."  Tr. 746.  The ALJ also found that Plaintiff suffered from non-severe "plantar fasciitis of the left heel, hypothyroidism, varicose veins, and chronic gastritis."  *Id*.  At step three, the ALJ determined that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" since February 22, 2017.  Tr. 747.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b)[.]  [S]he can occasionally stoop, crouch, kneel, and climb ramps or stairs.  She should never crawl and never climb ladders, ropes or scaffolds.  She can frequently reach, push, pull, handle and finger (gross and fine manipulation).  She is limited to occasional cervical extension (looking up) for overhead work.  She can tolerate occasional exposure to extreme heat, extreme cold, wetness, vibration, unprotected heights, and dangerous, unguarded machinery.  Due to mild anxiety, symptom flare ups, and side effects of medication, she is not capable of sustaining work requiring a specific production rate such as assembly line work or work that requires hourly quotas.  She is capable of dealing with occasional changes in a routine work setting, and understanding, remembering and carrying out simple instructions on a regular and sustained basis to complete a normal workday and workweek.

Tr. 748.  The ALJ determined that as of February 22, 2017, Plaintiff was unable to perform past relevant work as a nurse assistant (DOT[2] #355.674-014).  Tr. 752.  The ALJ also determined that prior to May 6, 2018, Plaintiff could perform other jobs that existed in significant numbers in the

---

[2] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

national economy. Tr. 753. However, the ALJ found that no such jobs existed as of May 6, 2018. Tr. 754. Thus, the ALJ concluded that Plaintiff was not disabled prior to May 6, 2018, but that she became disabled on that date and has continued to be disabled through the date of the ALJ's decision. *Id.*

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached by applying the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the RFC lacks the support of substantial evidence because the ALJ failed to assess Plaintiff's ability to sit, stand, walk, lift, and carry. ECF 12, at 7–15. Second, Plaintiff avers that the ALJ conflated the RFC assessment with a symptom analysis. *Id.* at 12–14. Third, Plaintiff contends that the ALJ "failed to properly evaluate Plaintiff's severe fibromyalgia." *Id.* at 15. Specifically, she argues that the ALJ "impermissibly discard[ed]" Plaintiff's fibromyalgia complaints "by relying on objective evidence consisting of physical examination findings." *Id.*

Defendant counters that the ALJ "explained [their] rationale [for] finding that Plaintiff could perform a reduced range of light work sufficient for this Court to perform meaningful judicial review." ECF 14, at 12. Defendant also avers that the ALJ appropriately separated their symptom evaluation from their RFC assessment. *Id.* at 11. Defendant further contends that the ALJ did not discount any of Plaintiff's fibromyalgia-related complaints, but instead "properly relied on Plaintiff's subjective statements about her own symptoms in forming [the] RFC[.]" *Id.* at 18. For the following reasons, the Court determines that remand is not warranted.

    A.  The ALJ Properly Determined Plaintiff's RFC.

The Court first considers Plaintiff's argument that the ALJ improperly assessed the RFC. A claimant's RFC represents "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311

*Vanesta H. v. Kijakazi*
Civil No. 23-594-CDA
December 18, 2023
Page 4

(4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  Pursuant to Social Security Ruling ("SSR") 96-8P, an RFC assessment must include an evaluation of a claimant's ability to perform the physical functions set forth at 20 C.F.R. § 404.1545(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work."  20 C.F.R. § 404.1545(b); *see* SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable.  *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it."  *Dowling*, 986 F.3d at 387 (alteration in original) (citation omitted).  Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions.  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff argues that the ALJ erred in assessing the RFC because they failed to analyze Plaintiff's ability to sit, stand, walk, lift, and carry.  ECF 12, at 13.  However, a careful review of the ALJ's decision makes clear that the ALJ adequately accounted for these functions.  In assessing the RFC, the ALJ assigned persuasive value to the opinions of Drs. K. Cylus and H. Hakkarinen insofar as these opinions outlined Plaintiff's exertional capabilities.  Tr. 751.  Drs. Cylus and Hakkarinen "reviewed the record" and opined that: (1) Plaintiff "could lift or carry 20 pounds occasionally and 10 pounds frequently" and (2) Plaintiff "could sit, stand, or walk 6 hours in an 8-hour workday."  *Id.*  Based on these opinions, the ALJ limited Plaintiff to light work.  Tr. 748.

While the RFC contains no explicit reference to lifting or carrying, the ALJ made clear that the limitation to "light work" was "as defined in" 20 C.F.R. § 404.1567(b).  Tr. 748.  This statute defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  Additionally, while the RFC does not expressly mention sitting, standing, or walking, a "limitation to light work implicitly includes a finding that the plaintiff [can] stand or walk off and on for a total of approximately six hours of an eight-hour workday[.]"  *Robinson v. Astrue*, No. 2:10-185-DCN, 2011 WL 4368416, at *8 (D.S.C. Feb. 18, 2011) (collecting cases), *report and recommendation adopted*, No. 2:10-185-DCN, 2011 WL 4368396 (D.S.C. Sept. 19, 2011).  Accordingly, the Court determines that the ALJ adopted the exertional limitations opined by Drs. Cylus and Hakkarinen in crafting the RFC.

Although the ALJ did not perform a function-by-function analysis of Plaintiff's ability to sit, stand, walk, lift, and carry, such an omission does not warrant remand unless "inadequacies in the ALJ's analysis frustrate meaningful review."  *Audlica D. v. Kijakazi*, No. BAH-22-1046, 2023 WL 1769665, at *5 (D. Md. Feb. 3, 2023) (quoting *Mascio*, 780 F.3d at 636).  By assigning persuasive value to medical opinions and incorporating their suggested limitations into the RFC,

the ALJ sufficiently addressed Plaintiff's ability to sit, stand, walk, lift, and carry. *See, e.g.*, *Janell W. v. Kijakazi*, No. BAH-22-2339, 2023 WL 4456848, at *3 (D. Md. July 11, 2023) (determining that although an ALJ did not "perform an explicit analysis of" a claimant's ability lift, carry, push, or pull, the ALJ "accounted for" these functions by assigning persuasive value to opinions that explicitly addressed the functions); *Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations. Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

In sum, the ALJ's adoption of these medical opinions provides "an accurate and logical bridge" from the evidence to the RFC. *Woods*, 888 F.3d at 694. Moreover, Plaintiff identifies no evidence that the ALJ failed to assess, nor any evidentiary contradictions that the ALJ failed to resolve, with respect to Plaintiff's ability to sit, stand, walk, lift, or carry. *See generally* ECF 12. Accordingly, the Court determines that substantial evidence supported the RFC.

      B.     <u>The ALJ Did Not Improperly Conflate the RFC and Symptom Analyses.</u>

Plaintiff also contends that the ALJ erred by conflating their analysis of Plaintiff's symptoms with their analysis of Plaintiff's ability to perform and sustain the exertional requirements of light work. ECF 12, at 13 (arguing that the ALJ "devoted the entirety of [the] RFC assessment to" explaining why Plaintiff's symptoms were not consistent with the evidence and that, consequently, the ALJ never assessed Plaintiff's ability to sit, stand, walk, lift, and carry). The Court disagrees. In conducting a symptom analysis, an ALJ "evaluate[s] the intensity and persistence of" a claimant's symptoms and determines "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence" in the record. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting SSR 16-3P, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017)). Although a symptom analysis is "relevant" to an RFC evaluation, an ALJ errs "by treating [the analyses] as one and the same." *Id.*

Here, the ALJ appropriately considered "limitations that result from [Plaintiff's] symptoms, such as pain," in crafting the RFC. *Id.* (quoting 20 C.F.R. § 416.945(a)(3)). For example, the ALJ determined that due to Plaintiff's "chronic back and shoulder pain, . . . she is precluded from climbing ladders and crawling." Tr. 751. The ALJ also limited Plaintiff's exposure to "environmental factors and hazards that could exacerbate [Plaintiff's] pain." *Id.* Additionally, the ALJ observed that "due to [Plaintiff's] periodic exacerbations of pain and non-severe anxiety, the undersigned has provided for simple tasks in a non-production setting in an effort to reduce stress that could trigger anxiety or increase [her] pain." *Id.* Based upon this analysis, and because the ALJ properly assessed Plaintiff's ability to sit, stand, walk, lift, and carry for the reasons explained above, the Court disagrees with Plaintiff that any overlap between the ALJ's RFC and symptom analyses amounted to harmful error.

      C.     <u>The ALJ Did Not Err in Assessing Plaintiff's Fibromyalgia.</u>

As a final matter, the Court turns to Plaintiff's argument that the ALJ erred by relying on "objective examination findings" as "relevant indicators" of the severity of Plaintiff's

*Vanesta H. v. Kijakazi*
Civil No. 23-594-CDA
December 18, 2023
Page 6

fibromyalgia. ECF 12, at 18. An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In *Arakas*, the Fourth Circuit held that an ALJ "applied an incorrect legal standard" by discrediting a claimant's complaints of fibromyalgia "based on the lack of objective evidence corroborating them." *Id.* at 96. The court concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her [fibromyalgia] symptoms to be supported by objective medical evidence." *Id*. (citation omitted).

> Here, the ALJ provided the following analysis of Plaintiff's fibromyalgia:
>
> The record also documents a history of fibromyalgia. In May 2017, the claimant rated her fibromyalgia pain at 6.5/10. She also complained of fatigue, poor memory, stiffness, muscle spasms, and numbness and tingling. An exam noted tender points in the neck, upper back, elbows, hips, and knees (Exhibit 15F, p. 11). In August 2017, the claimant rated her fibromyalgia pain at 3/10. She complained of morning stiffness, IBS, and joint and muscle pain. Muscle spasms were relieved with cyclobenzaprine. Her fibromyalgia was classified as controlled (Exhibit 15F, p. 7-8). Notes from November 2017 recount complaints of joint pain and muscle aches with weakness and numbness. Gait and station were normal (Exhibit 15F).

Tr. 750–51. Plaintiff contends that this analysis constituted error because the ALJ "impermissibly discard[ed]" Plaintiff's statements regarding the effects of her fibromyalgia by referencing "normal" gait and station findings. ECF 12, at 17. The Court disagrees. As noted above, Plaintiff's physical impairments are not limited to fibromyalgia and include osteoarthritis, spine disorders, and shoulder tendonitis. Tr. 746. In their analysis, the ALJ summarized fibromyalgia-related records from May and August 2017. Tr. 750–51. However, the ALJ's reference to "normal" gait and station findings from November 2017 appears to relate to other impairments. While the record of Plaintiff's November 13, 2017 appointment (documented at Exhibit 15F) makes reference to fibromyalgia in a list of Plaintiff's medical issues, *see* Tr. 445, Plaintiff does not appear to have made any complaints regarding fibromyalgia during the appointment, *see* Tr. 444–47. Plaintiff *did* complain, however, of muscle aches, joint pain, weakness, and numbness, among other issues. Tr. 446. A physician assistant performed a physical examination during the appointment and concluded, among other things, that Plaintiff possessed "normal gait and station." *Id*. But, given the lack of an explicit connection between this remark and Plaintiff's fibromyalgia, the Court is unpersuaded that the ALJ's reference to the treatment record's "gait and station" comment was made to discount the effects of Plaintiff's fibromyalgia.

Plaintiff also argues that the ALJ discounted her fibromyalgia symptoms by observing that Plaintiff's "strength was 5/5 in the upper extremity muscle groups and sensation was intact. Spurlings test was negative. While diffuse tenderness was present in the left shoulder, range of motion was unrestricted with no muscle atrophy. [Plaintiff] was advised to attend physical therapy and pursue conservative care, 'overall exam is benign[.]'" Tr. 750 (citing Exhibit 12F). A careful review of the ALJ's analysis, however, makes clear that these observations concerned Plaintiff's

*Vanesta H. v. Kijakazi*
Civil No. 23-594-CDA
December 18, 2023
Page 7

"neck and shoulder pain," not fibromyalgia. *Id.* Furthermore, the exhibit cited by the ALJ is an orthopedic treatment record that includes recommendations for Plaintiff's left shoulder and spine impairments and does not concern fibromyalgia. *See* Tr. 425–29. For these reasons, the Court disagrees that this analysis reflects the ALJ's dismissal of Plaintiff's fibromyalgia symptoms.[3]

## V.    CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g), The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[3] For similar reasons, the Court is unpersuaded by Plaintiff's suggestion that the ALJ discounted her fibromyalgia symptoms by stating that "[a]n exam of the left shoulder noted normal strength and tone and normal range of motion." ECF 12, at 19 (citing Tr. 749). The ALJ's reference to Plaintiff's shoulder was unrelated to fibromyalgia and instead concerned Plaintiff's "complain[t] of neck pain related to a fall several years earlier." Tr. 749.